**BUCH EXPRESS, Inc.**

v.

**The UNITED STATES.**

No. 49294.

United States Court of Claims.

July 12, 1955.

Samuel W. Earnshaw, New York City, for plaintiff. Dale C. Dillon, Washington, D. C., was on the brief.

Lino Graglia, New York City, with whom was Asst. Atty. Gen. Warren E. Burger, for defendant. William A. Stern, II, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

This is an action by a trucking company to recover transportation charges for certain shipments of radar equipment based on the rate applicable to "Range or Height Finders" or "Scientific Instruments," rather than the rate applicable to radio equipment.

The question presented is whether the radar equipment shipped should be classified, for transportation rate purposes, under the general heading of "Electrical Appliances or Equipment," as "Radio Transmitting and Receiving Sets Combined," which carried the first class rate, or under the general heading of "Drawing Instruments, Optical Goods or Scientific Instruments," either as "Range or Height Finders," or as "Scientific Instruments, N. O. I.,"[1] both of which carry double the first class rate.

Plaintiff, a Pennsylvania corporation, is the successor in interest to a partnership motor common carrier which carried the shipments involved in this case. These shipments were made by the War Department (now the Department of the Army) during the period March 20, 1945 to June 21, 1945, from Lake Success, New York, to Baltimore, Maryland, and consisted of certain radar sets, designated "AN/TPL–1" by the Army, with parts, equipment and maintenance tools therefor.

A radar set is an electrical apparatus which operates by sending out radio (electromagnetic) waves. When these waves hit an object they are reflected ("bounce") back to the set, where, by a

1. Not otherwise indexed.

cathode ray tube, they appear as pictures ("blips") on a receiving screen. Since the speed of the radio waves is constant and known, the distance of the object from the set can be measured by measuring the time lapse between the sending and the receiving of the radio waves, but since radio waves travel at a tremendous rate of speed (186,000 miles per second) this measurement is only approximate.

Radar Set AN/TPL–1 was a mobile, compact, lightweight radar unit designed for use with an anti-aircraft searchlight. Among its general functions was that of searching the sky for enemy aircraft, and, when found, to indicate their position by furnishing the slant range (distance in yards), and azimuth and elevation (angular directions in Mils). The

set also computed the target altitude in feet. Its maximum slant range was 60,000 yards. The data so determined would be furnished to the operators of an anti-aircraft searchlight so that they could direct the beam of the searchlight when turned on to strike the target. The set could then be used to search for a second target while the searchlight followed the original target.

Plaintiff's predecessor participated in a national trucking organization which published a tariff known as "National Motor Freight Classification No. 7, C. F. Jackson, Agent's MF–I. C. C. No. 14," and which contained ratings on all articles usually shipped over the lines of motor carriers in interstate commerce. The ratings here relevant are as follows:

| Item | Article | Ratings |
|---|---|---|
| | DRAWING INSTRUMENTS, OPTICAL GOODS OR SCIENTIFIC INSTRUMENTS—Continued: | |
| | Range or Height Finders, with or without stands, in | |
| 17 | boxes and crates .............................. | D1 |
| * | *          *          *          *          * | * |
| 21 | Scientific Instruments, N. O. I., in barrels or boxes .... | D1 |
| * | *          *          *          *          * | * |
| | ELECTRICAL APPLIANCES OR EQUIPMENT OR PARTS NAMED—Continued: | |
| | Radio Transmitting and Receiving Sets combined, in | |
| 38 | boxes and crates .............................. | 1 |

The designations "1" and "D1" mean that the first-class rate and double the first-class rate, respectively, are applicable to the items listed. These rates are translated into money by means of another tariff, issued by the Middle Atlantic States Motor Carrier Conference, Inc., in which plaintiff's predecessor also participated, and known as "Exceptions to National Motor Freight Classification No. 7, East, Freight Tariff No. 10–D, MF–I. C. C. No. 6." This tariff gave the first-class rate as so many cents per 100 pounds of the article shipped, and double the first-class rate as twice as much. The first-class rate applicable during the period here involved for shipments from Lake Success, New York, to Baltimore, Maryland, was $1.09 for 100 pounds prior

to May 14, 1945, and $1.115 per 100 pounds thereafter, and double the first-class rate was $2.18 per 100 pounds prior to May 14, 1945, and $2.25 per 100 pounds thereafter.

The shipments here involved were described in the bills of lading as "Radio Receiving and Transmitting Sets," "Second Echelon Spares," and "Radio Receiving and Transmitting Sets and Second Echelon Parts." Plaintiff's predecessor first considered this equipment to be classifiable, under the general heading "Drawing Instruments, Optical Goods, or Scientific Instruments," as Scientific Instruments, N. O. I." This classification carries double the first-class rate and plaintiff collected charges accordingly. The General Accounting Office ruled that

it should be classified, under the general heading "Electrical Appliances or Equipment or Parts Named," as "Radio Transmitting and Receiving Sets, Combined," which carries the first-class rate. The difference between the charges collected and those which the General Accounting Office deemed applicable, were deducted from moneys due plaintiff for other transportation.

The total charges received by plaintiff, after deductions by defendant, were $2,847.44. The charges which would have accrued at double the first-class rate are $5,833.78, so that if double the first-class rate is found to be applicable, defendant will be liable to pay the additional amount of $2,986.34.

The applicable ratings for radar equipment, such as was shipped by defendant, were for a long time a subject of discussion between the Department of the Army, the General Accounting Office, and the National Classification Board of the American Trucking Association, Inc. That Board determined applicable ratings on behalf of the *motor carriers*. On May 20, 1947, the Board attended a demonstration of radar installations conducted by the War Department during which the working parts were shown and the principles involved explained. Some nine months after this demonstration the Board came to the conclusion, in agreement with the General Accounting Office and the bill of lading descriptions, that the equipment should be classified as "Radio Sending and Receiving Sets, Combined." However, about two weeks after this decision, Mr. Yingling, a member of the Board, and plaintiff's chief witness, wrote to the Freight Branch, Department of the Army, sending copies to the General Accounting Office, to plaintiffs, and to the Weighing & Research Bureau of the American Trucking Association, Inc., stating that the equipment in question was a range and height finder and that double the first-class rate was, therefore, applicable to such shipments. This change of opinion was not based on any further investigation of the actual equipment or of its transportation characteristics, but was based solely on certain definitions and explanations contained in War Department Technical Manuals.

The matter was then further considered by the Board until September 18, 1953, at which time the Board again came to the conclusion that the original classification, "Radio Transmitting and Receiving Sets, Combined," was the proper one. The Board said:

"Recently the full membership of the Board arranged to inspect a very complete Radar installation at one of the nearby Airforce Bases for the purpose of learning at first hand how the equipment is used and of what it consists. We learned that, basically, Radar is a type of radio * * *.

"After considering the facts observed and learned, the Board has concluded that Radar receiving equipment should be rated as Radio Receiving Sets. * * *."

■ It is noted at the outset that the question in this case is one of fact, i. e., under which classification heading of the tariff do radar sets AN/TPL–1 fall. Plaintiff has the burden to show (1) that the classification of this equipment as "Radio Sending and Receiving Sets" under "Electrical Appliances and Equipment" made by the National Classification Board of the American Trucking Association, is wrong and (2) that its classification as either "Range or Height Finders" or "Scientific Instruments, N. O. I.," both appearing under "Drawing Instruments, Optical Goods or Scientific Instruments" is correct.

We believe the plaintiff has failed to meet the burden of proof on both issues. First plaintiff has failed to show that radar should not be classified as radio equipment.

Plaintiff relies upon purported distinctions between radar and radio equipment which the evidence does not sustain. Radar operates on familiar radio principles. Its basic working parts are essentially electronic equipment such as is

found in radio and television sets, each of which take the first class rate. National Motor Freight Classification No. 7, C. F. Jackson, Agent MF–I. C. C., No. 14; p. 121 of Exceptions to National Motor Freight Classification No. 7.

The Interstate Commerce Commission has consistently held that the true test for classification purposes is the character of the article shipped. See Northern Pump Co. v. Chicago, M., St. P. & P. R. R. Co., 190 I.C.C. 421, 422; Markstein v. Missouri Pac. R. Co., 243 I.C.C. 345, 348; Linen Thread Co., Inc. v. Pope & Talbot, Inc., 256 I.C.C. 79, 81; Chemi Products Co. v. Springmeier Shipping Co., 266 I.C.C. 263, 265.

In all bills of lading prepared by Army personnel, these shipments were described as radio equipment. There is no evidence that the shipments were deliberately described incorrectly and the equipment having been manufactured by the Army according to Army specifications, it would seem that the Army was best qualified to describe the characteristics of it. As was said in Northern Pump Co. v. Chicago, M., St. P. & P. R. R. Co., supra, "we have in numerous cases accepted a manufacturer's description of a commodity for sales purposes as determinative of its identity for transportation purposes."

Moreover, and very important to the determination of this issue, the National Classification Board of the American Trucking Association, after twice fully considering the question of proper classification of radar, came to the conclusion that radar should be rated as radio equipment. This Board is a body set up by the trucking industry specifically for the purpose of creating and interpreting classification schedules, and acts as the representative of the carriers.

Even were the two descriptions and tariffs equally appropriate, the shipper is entitled to have applied the one specifying the lower rates. United States v. Gulf Refining Co., 268 U.S. 542, 546, 45 S.Ct. 597, 69 L.Ed 1082.

Secondly, plaintiff has failed to show that radar should be classified either as "Range or Height Finders" or as "Scientific Instruments."

Plaintiff's first contention in this respect is that radar should be considered as "Range or Height Finders." The evidence shows, as found by the commissioner of this court, that a "range finder" is an optical instrument for finding the distance to a target.

The heading "Drawing Instruments, Optical Goods or Scientific Instruments" and the items listed thereunder, "Range or Height Finders" and "Scientific Instruments, N. O. I.," shows that those terms as they are used clearly indicate delicate and precise optical instruments. The radar equipment in this case was used merely to detect the presence of an object which may not be visible. Range or height finders are used to give the location of the object and necessarily would encompass delicate and precise optical instruments as well as scientific instruments to find the exact location of objects such as aircraft. The evidence shows that radar is only accurate within 500 yards and the users need not have scientific training. It must be further noted that the evidence shows without contradiction that this radar equipment was not a delicate precision instrument—that it is a field Army type of equipment that has to be transported on its own wheels across country and bumped along like a jeep and contains the same basic electronic components as a piece of field radio equipment.

Plaintiff points to several dictionary and encyclopedia definitions as well as the Army technical manuals upon which it bases its contention that this radar equipment is a range and height finder. However, the question here is not what is the best definition of "Range or Height Finders" but whether this radar equipment fits within the meaning of that term as used for rate fixing purposes in the transportation schedule.

The article as a whole must be looked to and the nature of the article must be

looked to rather than its use in determining classification. Anthony v. Director General, 61 I.C.C. 366, 368; Simon v. Southern Railway, 102 I.C.C. 326; Union Smelting & Refining Co. v. Pennsylvania Railroad Co., 152 I.C.C. 434, 436; Lynchburg Iron & Metal Co. v. Seaboard Air Line Railway, 160 I.C.C. 241, 242; Val Blatz Brewing Co. v. Atchison, T. & S. F. Railway, 173 I.C.C. 488, 490; Lansing Dairy Co. v. Wabash Railway, 185 I.C.C. 599, 600; Darling & Co. v. New York, C. & St. L. R. Co., 213 I.C.C. 418, 422.

Therefore, it must be concluded that considering the underlying transportation characteristics involved, these radar sets are electronic equipment very similar to radio in principle and in their essential parts, and the classification made by the National Classification Board is proper. The first class rate applicable to radio is the proper charge to be made on these shipments.

Plaintiff's petition is dismissed.

JONES, C. J., and MADDEN, WHITAKER and LITTLETON, JJ., concur.